UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 28 2019 ★

BROOKLYN OFFICE

------------------------------------------------------------ x
GODINGER SILVER ART LTD. and P&W :
GIFTS, LLC, :
        :
                    Plaintiffs, : <u>MEMORANDUM & ORDER</u>
        :
        -against- : 18-CV-6175 (ENV) (ST)
        :
LIRAN HIRSCHKORN, :
        :
                    Defendant. :
------------------------------------------------------------ x

VITALIANO, D.J.

Plaintiffs Godinger Silver Art Ltd. ("Godinger") and P&W Gifts LLC ("P&W") commenced this action against defendant Liran Hirschkorn on November 2, 2018. (Compl., Dkt. 1). On November 28, 2018, plaintiffs filed an amended complaint (First Am. Compl., Dkt. 8), bringing various patent claims and a claim for tortious interference with prospective business relations. (*Id.* ¶ 20-46). They also sought attorney's fees, pursuant to 35 U.S.C. § 285. (*Id.* at 11 (request for relief)). The wheels turned a bit in the other direction when, on December 18, 2018, the patent claims were dismissed by stipulation, leaving only the tortious interference claim. (Dkt. 25). Still pushing back, on January 28, 2019, Hirschkorn moved to dismiss the amended complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, arguing that plaintiffs had failed to sufficiently plead a claim for tortious interference; the absence of subject matter jurisdiction; and that any tortious interference claim is preempted by federal patent law. (Def. Mot., Dkt. 37). For the reasons set forth below, the motion is granted, but plaintiffs will be afforded leave to file a second amended complaint.

1

Background[1]

P&W sells an assortment of Godinger-created products on the online marketplace Amazon.com ("Amazon"). (First Am. Compl. ¶¶ 2, 7, 12, 14). On or about November 19, 2017, P&W began offering a Godinger globe-shaped gift decanter for sale (the "First Godinger Globe Decanter"). (*Id.* ¶ 7). On July 31, 2018, a design patent for a globe-shaped gift decanter was issued to Hirschkorn ("the '263 patent"). That same day, Hirschkorn filed a "take down" notice[2] with Amazon, requesting that Amazon remove from its website the First Godinger Globe Decanter, which allegedly infringed the '263 patent. (*Id.* ¶ 8). The following day, Amazon removed the First Godinger Globe Decanter from its website. (*Id.* ¶ 9).

On August 8, 2018, plaintiffs' counsel provided Hirschkorn's counsel with "prior art" that plaintiffs believed rendered the '263 patent invalid. Meanwhile, Godinger modified the design of the First Godinger Globe Decanter to further distinguish it from the design in the '263 patent, resulting in a new product (the "Second Godinger Globe Decanter"). On October 13, 2018, P&W began offering the Second Godinger Globe Decanter for sale on Amazon's website. (*Id.* ¶ 11-12). On October 21, 2018, Hirschkorn filed a new take down notice with Amazon for removal of the Second Godinger Globe Decanter, alleging that it, too, infringed the '263 patent. (*Id.* ¶ 13). Amazon removed the Second Godinger Globe Decanter from its website the next day. (*Id.*).

Expanding its product line further yet, on November 13, 2018, P&W began offering a Godinger skull-shaped gift decanter for sale on Amazon (the "Godinger Skull Decanter"). (*Id.* ¶

---

[1] The facts are recounted in the light most favorable to plaintiffs, with all reasonable inferences drawn in their favor, as they must be on a motion to dismiss.
[2] On July 31, 2017, "Hirschkorn requested that Amazon remove Plaintiffs' [First Godinger Globe Decanter] from Amazon's website . . . ." (First Am. Compl. ¶ 8).

14). On November 20, 2018, Hirschkorn filed another take down notice with Amazon, requesting removal of the Godinger Skull Decanter for alleged infringement of another one of his patents, for a skull-shaped decanter ("the '640 patent"). (*Id.* ¶ 15). On November 21, 2018, Amazon removed the Godinger Skull Decanter, but P&W immediately complained to Amazon that the Godinger Skull Decanter did not infringe the '640 patent and demanded that the product be reinstated. (*Id.* ¶ 16). Reacting to the counter-pressure, Amazon did exactly that—the Godinger Skull Decanter was reinstated on its marketplace on November 22, 2018. But, Hirschkorn filed a second take down request, targeting the reinstated decanter, on the same day. (*Id.*). Flipping back, Amazon ordered that the Godinger Skull Decanter once again be removed. (*Id.*). Later that day, Amazon would flip once more after P&W again complained to it. (*Id.* ¶ 17). The Godinger Skull Decanter was reinstated for sale on Amazon a second time. (*Id.*).

The litigation pace that would ensue when suit was filed shortly thereafter was just as dizzying. On November 2, 2018, plaintiffs filed the instant action against Hirschkorn, seeking a declaratory judgment of invalidity and non-infringement relating to Hirschkorn's two design patents, along with damages for Hirschkorn's alleged tortious interference with prospective business relations and a request for attorney's fees. (*Id.* ¶ 36-46; *id.* at 11). On November 28, 2018, plaintiffs sought a temporary restraining order and preliminary injunction to prohibit Hirschkorn from filing additional take down notices for the globe and skull decanters.[3] (Dkt. 10). The parties filed, on December 14, 2018, a stipulation requesting the dismissal of two counts without prejudice and two counts with prejudice; all four were related to the patent

---

[3] Hirschkorn rescinded his take down notices for the First and Second Godinger Globe Decanters on December 6, 2018. (Dkt. 19). Amazon relisted the Second Godinger Globe Decanter the same day. (*Id.*). The First Godinger Globe Decanter was not relisted, however, because plaintiffs were no longer selling it. (Pls. Opp., Dkt. 38, at 3 n.1).

3

claims. Hirschkorn now moves to dismiss the sole remaining claim: the state law claim for tortious interference with prospective business relations.

## Standard of Review

Under Federal Rule of Civil Procedure 12(b), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When reviewing such motions, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Anzelone v. ARS Nat'l Servs., Inc.*, No. 2:17-cv-04815, 2018 WL 3429906 (E.D.N.Y. July 16, 2018). To survive such a motion, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## Discussion

I. Subject Matter Jurisdiction

At the outset, defendants attempt to slam shut the door to the courthouse by arguing that the Court's supplemental jurisdiction may not now be validly invoked, and, therefore, subject matter jurisdiction to entertain the state law tortious interference claim is absent. In their view, jurisdiction to hear that claim is tethered to the patent claims, all of which were discontinued by

4

stipulation, leaving, they argue, no basis for supplemental jurisdiction.[4] The argument starts in the middle of the movie; the opening scenes, however, cannot be overlooked. Namely, a federal district court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1338(a), over patent cases, including claims under 35 U.S.C. § 285 for attorney's fees. *See H.R. Tech., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed. Cir. 2002) (holding that a claim for attorney's fees under § 285 is an independent basis for federal question jurisdiction). Moreover, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The existence of federal subject matter jurisdiction, furthermore, is determined by what is pleaded in the complaint. *AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (2d Cir. 1993) ("In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn . . . ."). On a motion to dismiss, a court must accept as true all material factual allegations in the complaint concerning subject matter jurisdiction. *Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 241 (E.D.N.Y. 2009).

In the opening salvo of their opposition, plaintiffs press that not all of the underlying federal claims have been discontinued. They contend that the parties' stipulation covered the

---

[4] Although defendants' jurisdiction argument appears in a short section buried near the end of their brief, it is, regardless how fleeting the argument, no trifling point. It is no less than an issue of constitutional dimension. A federal district court has no power to address the merits of a case over which it lacks subject matter jurisdiction. Accordingly, the challenge to jurisdiction must be resolved before reaching any other challenge. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002).

four patent claims but did not discontinue the amended complaint's request for attorney's fees. Such fees, plaintiffs argue, are still recoverable and act as the anchor to litigate the state claim. Defendant counters that fees are not recoverable here because plaintiffs cannot show that they are the prevailing party and there are no "exceptional" grounds for the award of fees. (Dkt. 39 at 11-14). *See Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 334–35 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016) ("The Patent Act's fee shifting provision provides that a 'court in exceptional cases may award reasonable attorney fees to the prevailing party.'"). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014).

In his motion to dismiss, Hirschkorn has failed to demonstrate, as a matter of law, that exceptional circumstances are absent here, especially given that plaintiffs' counsel expediently secured the dismissal of all four patent claims. *Cf. Highway Equip. Co. v. FECO. Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006) ("While the covenant [not to sue] may have eliminated the case or controversy pled in the patent-related counterclaims and deprived the district court of Article III jurisdiction with respect to those counterclaims . . . the covenant does not deprive the district court of jurisdiction to determine the disposition of . . . the request for attorney fees under 35 U.S.C. § 285.").[5]

---

[5] "[D]istrict courts have universally applied Federal Circuit law in patent cases in order to determine whether a court retains subject matter jurisdiction in the face of a covenant by the plaintiff not to sue." *In re Rivastigmine Patent Litig. (MDL No. 1661)*, No. 05 MD 1661 HB JCF, 2007 WL 1154000, at *2 (S.D.N.Y. Apr. 19, 2007).

Separately, plaintiffs' state law claim passes another touchstone test for the exercise of supplemental jurisdiction. The patent claims and tortious interference claim unquestionably derive from a "common nucleus of operative facts,"[6] and thus supplemental jurisdiction is appropriate here. *See Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991) (where common nucleus of operative facts is present, district courts "commonly will exercise [supplemental jurisdiction] if 'considerations of judicial economy, convenience and fairness to litigants' weigh in favor of hearing the claims at the same time"). In sum, the Court retains original jurisdiction over plaintiffs' claim for attorney's fees, despite the dismissal of the underlying patent claims, as well as its supplemental jurisdiction over the state law claim.[7]

II. <u>Preemption</u>

Without additional facts to the contrary, even if the amended complaint sufficiently pleaded a claim for tortious interference, it is true that plaintiffs' tort claim, as currently framed, would be preempted by federal patent law. "Federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citation omitted); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998) ("Federal patent law bars the

---

[6] Plaintiffs' state law claim for tortious interference arises from Hirschkorn's repeated filing of take down notices for alleged infringement of his design patents. Plaintiffs' claim for attorney's fees stems from their response and attempt to invalidate Hirschkorn's design patents.

[7] Even if plaintiffs' request for attorney's fees ultimately were to be dismissed, it is a valid basis for federal subject matter jurisdiction here. Additionally, although subject matter jurisdiction *could* be declined in these circumstances, *see* 28 U.S.C.A. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a state claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction"), there is nothing that would prevent the Court from exercising its supplemental jurisdiction either. *See Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 263 (2d Cir. 2006) (decision whether to exercise supplemental jurisdiction "is discretionary and not a litigant's right").

7

imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith.").

However, "[s]tate tort claims, including tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patentholder acted in bad faith in its publication of the patent." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). What constitutes bad faith is determined on a "case by case basis." *Id.* at 1354. If the patentee knows, for example, that "the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id.* Critically, however, "a competitive commercial purpose is not of itself improper, and bad faith is not supported when the information is objectively accurate." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998)

At issue, therefore, is whether plaintiffs have offered sufficient facts to plausibly allege that Hirschkorn acted in bad faith in filing the relevant take down notices. Where a plaintiff claims that "a patent holder has engaged in wrongful conduct by asserting claims of patent infringement," that plaintiff must "establish that the claims of infringement were objectively baseless." *Globetrotter*, 362 F.3d at 1377. The Federal Circuit has applied the "objectively baseless" standard to a situation in which "the party challenged statements made in cease-and-desist letters by a patentee asserting its patent rights." *Id.* at 1377. So, to avoid preemption, the threat of an infringement suit "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 1376 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)).

Here, plaintiffs' allegations fall woefully short. They allege only that they provided Hirschkorn's counsel with "prior art," which *they* believed rendered the '263 patent invalid, and that Hirschkorn subsequently "[made] wrongful and baseless claims . . . ." (First Am. Compl. ¶ 40). This merely relates plaintiffs' belief and fails to plausibly touch on Hirschkorn's subjective belief after, presumably, being shown the prior art by his counsel; for instance, that he then believed his patents were invalid or his claims of patent infringement were objectively baseless.

Tellingly, plaintiffs' argument that it "can be reasonably inferred . . . that Hirschkorn knew that Plaintiffs' decanters did not infringe his design patent," (Pls. Opp. at 10), is built on little more than a string of legal conclusions, unsupported by any factual allegations. (*Id.* (citing complaint allegations that defendant "inten[ded] to interfere," "made wrongful and baseless infringement allegations" and "was aware of" plaintiffs' expectation that they would sell their products on Amazon)). In short, nothing in the complaint plausibly raises the inference that Hirschkorn subjectively believed his patents were invalid or that his take down notices were filed in anything other than good faith. As the amended complaint fails to satisfy this indispensable element, plaintiffs' tortious interference claim is preempted by federal law and must be dismissed.

III. <u>Tortious Interference</u>

Assuming it were not preempted by federal law, to state a claim for tortious interference with prospective business relations under New York law, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006). Defendant,

apparently conceding that the first element has been satisfied,[8] argues that plaintiffs have failed to plausibly allege the remaining three elements.

   a. Interference

The amended complaint sufficiently alleges that Hirschkorn interfered with plaintiffs' prospective business relations. "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship,'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *McGill v. Parker*, 179 A.D.2d 98, 105, 582 N.Y.S.2d 91, 95 (1st Dep't 1992)), but plaintiffs here allege that Hirschkorn improperly filed take down notices and therefore prevented sales to third-party customers, sales by third-party retailers and continued transactions with Amazon. All of this is sufficient to plead interference with plaintiffs' business relationships. The law, of course, does not prohibit or even discourage all forms of interference. The fundamental questions are whether the interference was improper and whether plaintiffs were injured, both of which are discussed below.

   b. Improper Purpose or Means

Plaintiffs must allege sufficient facts to plausibly show either that Hirschkorn "acted solely out of malice" or that he "used dishonest, unfair, or improper means." *See Kirch v.*

---

[8] There is some dispute over what prospective business relationships the complaint identifies. Hirschkorn argues that the only relationship that the amended complaint alleges he interfered with is the one between P&W and Amazon. (Dkt. 36 at 9). At the Rule 12 stage, however, the Court must assume all well-pleaded facts in the complaint to be true. The prospective business relationships plausibly identified in the complaint go far beyond the one identified by Hirschkorn. The first element of this cause of action is satisfied by plaintiffs' pleading of allegations that they had prospective business relations with Amazon, plaintiffs' potential Amazon customers and retail customers that sell Godinger's products on Amazon. (*See* First Am. Compl. ¶ 41).

10

*Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006). "'Wrongful means' includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and economic pressure." *Lader v. Delgado*, 941 F. Supp. 2d 267, 272 (E.D.N.Y. 2013). Generally, it does not include "simple persuasion" alone. *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 337 (E.D.N.Y. 2014); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (internal citation and quotations omitted) (noting that "plaintiff's mere interest or expectation in establishing a contractual relationship must be balanced against the competing interest of the interferer, as well as the broader policy of fostering healthy competition"). To satisfy this element, therefore, a plaintiff must generally demonstrate that the defendant's conduct amounted to an "independent crime or tort," was "taken solely out of malice" or amounted to "extreme and unfair economic pressure. *Carson Optical, Inc.*, 11 F. Supp. 3d at 337.

The amended complaint falls well short of demonstrating any of these. Plaintiffs make no plausible allegation that Hirschkorn acted for any reason other than his earnest, subjectively held belief that plaintiffs were, in fact, infringing his patents. In other words, the only plausible inference drawn from the amended complaint is that Hirschkorn used "simple persuasion" – specifically, the filing of *pro forma* take down notices – to vindicate his legal rights and protect his intellectual property. The amended complaint merely alleges:

- "Plaintiffs' counsel provided Hirschkorn's counsel with prior art which Plaintiffs believed rendered" one of the patents "invalid." (First Am. Compl. ¶ 10).
- "Hirschkorn's actions were done with the intent to interfere with P&W Gifts' relationship[s]." (*Id.* ¶ 41).

- Hirschkorn made "wrongful and baseless" infringement claims to Amazon and "used dishonest, unfair and improper means to interfere with Plaintiffs' business." (*Id.* ¶ 42).

- "Hirschkorn's actions were done with an intent to harm Plaintiffs." (*Id.* ¶ 43).

- Hirschkorn took his actions "to squelch competition from Plaintiffs and enhance sales of Hirschkorn's competing products, which are also sold on Amazon's website." (*Id.* ¶ 45).

These conclusory statements offer no facts to plausibly support plaintiffs' claim that Hirschkorn acted with any improper motive or means.

Plaintiffs attempt to resuscitate their claim by asserting that "it can be reasonably inferred . . . that Hirschkorn knew [plaintiffs]' decanters did not infringe his design patents" and thus Hirschkorn "used at least misrepresentation" to interfere with P&W's relationship with Amazon and potential customers. (Pls. Opp. at 10). But the amended complaint contains no *factual* allegation from which this inference could be drawn. Moreover, Hirschkorn's purported motive to "squelch competition" and "enhance sales of his competing products" is, without additional context or factual support, a quintessential example of economic self-interest, and thus insufficient to plead this element. *See Carson Optical*, 11 F. Supp. 3d at 336-37; *see also RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011) (tortious interference claim dismissed where complaint failed to allege that party that sent cease-and-desist letter involving trademark "believed that [it] had no such rights [in the trademark] when the letter was sent"). Because plaintiffs failed to plead sufficient facts to plausibly allege that Hirschkorn used "wrongful means" or had an improper purpose in filing the take down notices, this element of the tortious interference claim remains unsatisfied.

c. Injury

The amended complaint alleges that plaintiffs were not able to sell their decanters on Amazon for a defined period of time as a result of Hirschkorn's tortious interference. (First Am. Compl. ¶ 9-19). Plaintiffs also allege that, absent defendant's tortious interference, Godinger had "the expectation of selling those decanters" to its retail customers. (*Id.* ¶ 44). Finally, plaintiffs claim that they have been materially damaged through lost sales. (*Id.* ¶ 45-46). Taken as true, plaintiffs' allegations plausibly suggest that they suffered monetary injury as a result of Hirschkorn's interference. The fourth element, therefore, is satisfied at this stage.

IV. <u>Leave to Amend</u>

"Generally, leave to amend should be 'freely given.'" *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000). On the other hand, "a motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (internal quotations and citation omitted). Because the Court determines that plaintiffs may be able to cure the deficiencies identified in their current pleading, they are afforded leave to further amend their complaint as to their state law claim for tortious interference with business relations.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted. Plaintiffs, however, are afforded 30 days' leave from the date this Order is entered on the docket to file a second amended complaint that complies with the decision of this Order.

Failure to file a timely, conforming second amended complaint will result in the dismissal of this case with prejudice.

So Ordered.

Dated: Brooklyn, New York
August 21, 2019

/s/ USDJ ERIC N. VITALIANO
────────────────────────
ERIC N. VITALIANO
United States District Judge